No. 13-1610

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

ANGELEX LTD., as owner of the M/V ANTONIS G. PAPPADAKIS, and the
M/V ANTONIS G. PAPPADAKIS, *in rem*,

Petitioners-Appellees,

v.

UNITED STATES OF AMERICA,
UNITED STATES COAST GUARD, and
UNITED STATES CUSTOMS AND BORDER PROCETION AGENCY,

Respondents-Appellants.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FORT HE EASTERN DISTRICT OF VIRGINIA

———————————

**BRIEF FOR PETITIONERS-APPELLEES**

———————————

George M. Chalos, Esq.
CHALOS & CO, P.C.
55 Hamilton Avenue
Oyster Bay, New York 11771
(516) 714-4300
*Counsel for Petitioners-Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1610      Caption: Angelex Ltd, et al v. United States of America, et al

Pursuant to FRAP 26.1 and Local Rule 26.1,

Angelex Ltd, as owner of the M/V ANTONIS G. PAPPADAKIS & M/V ANTONIS G. PAPPAKDIS, in rem
(name of party/amicus)

_____

who is _____Appellees_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                  ☐ YES ☑ NO
      If yes, identify all such owners:

i

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _s/George M. Chalos_____     Date: _____May 10, 2013_____

Counsel for: _Appellees_____

## CERTIFICATE OF SERVICE
***************************

I certify that on ___May 10th, 2013____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_s/George M. Chalos_____        _____May 10, 2013_____
(signature)                                  (date)

ii

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B. Applicable Statute – 33 U.S.C. § 1908(e) . . . . . . . . . . . . . . . . . . . . . .10

    C. The District Court Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

I.    THE DISTRICT COURT PROPERLY EXERCISED SUBJECT
       MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    A. The APA Provides a Proper Basis for the Exercise of Subject
       Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        1. The District Court properly found final agency action . . . . . . . . .20

        2. Even if there had not been final agency action, the exceptions
           to the exhaustion requirement apply . . . . . . . . . . . . . . . . . . . . . . .24

            a. *Statutory Construction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

            b. *Irreparable Injury* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

       c. *Futility* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

       d. *Inadequacy of Administrative Remedies* . . . . . . . . . . . . . 29

       e. *The Administrative Decision Would Go Unreviewed* . . . . .30

   3. The government's reliance on 5 U.S.C. § 701(a)(2)
      is misplaced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

   4. Congress did not preclude judicial review of the Coast Guard's
      interpretation and application of 33 U.S.C. § 1908(e) . . . . . . . . 36

       a. *33 U.S.C. § 1908(e) Does Not Bar Review* . . . . . . . . . . . .38

       b. *There is no Congressional Intent to Bar Review of*
         *Agency Decisions under APPS* . . . . . . . . . . . . . . . . . . . . . 39

 B. Admiralty Jurisdiction Was Properly Exercised by the District Court . .41

II.    THE DISTRICT COURT CORRECTLY DETERMINED THE
       COAST GUARD HAD EXCEEDED THE SCOPE OF ITS
       STATUTORY AUTHORITY AND ABUSED ITS DISCRETION . . . 44

 A. Applicable Standard for Statutory Analysis. . . . . . . . . . . . . . . . . . . . 45

 B. The Government's Statutory Construction Arguments
    are Misplaced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A) . . . . . . . . . . . . . . . . 55

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .56

# TABLE OF AUTHORITIES

**CASES:**

*Abbott Labs v. Gardner*,
    387 U.S. 136, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967) . . . . . . . . . . .  22, 37

*American Fed'n of Gov't Employees v. Donovan*,
    683 F.2d 511 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Amstar Corp. v. S/S Alexandros T.*,
    664 F.2d 904 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*A.T. Massey Coal Co. v. Barnhart*,
    472 F.3d 148 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 49

*Bennett v. Spear*,
    520 U.S. 154, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997) . . . . . . . . . . . . .20

*Bergesen d.y. v. Lindholm*,
    760 F. Supp. 976 (D. Ct. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Block v. Community Nutrition Institute*,
    467 U.S. 340, 104 S. Ct. 2450, 81 L. Ed. 2d 270 (1984) . . . . . . . . . .  37, 39

*Borg-Warner Protective Serv. Corp. v. EEOC*,
    82 F. Supp. 2d 20 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Bowen v. Michigan Academy of Family Physicians*,
    476 U.S. 667, 106 S. Ct. 2133, 90 L. Ed. 2d 623 (1986) . . . . . . . . . .  37, 38

*Brogan v. United States*,
    522 U.S. 398, 118 S. Ct. 805, 139 L. Ed. 2d 830 (1998) . . . . . . . . . . . . . .51

*Burns v. Alcala*,
    420 U.S. 575, 95 S. Ct. 1180, 43 L. Ed. 2d 469 (1975) . . . . . . . . . . . . . . .45

*Caldwell v. Solus Ocean Systems, Inc.*,
    734 F.2d 1121 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cargill Ferrous Int'l v. M/V Medi Trader*,
    513 F. Supp. 2d 609 (E.D. La. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

*Califano v. Sanders*,
    430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977) . . . . . . . . . . . . . . . . . .19

*Chevron USA, Inc. v. National Resources Defense Council, Inc.*,
    467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) . . . . . . . . . . .25, 44

*Chesapeake Ranch Water Co. v. Bd. of Comm'rs*,
    401 F.3d 274 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971) . . . . . . . . . . . . . . . .32

*Clear Sky Car Wash, LLC v. City of Chesapeake*,
    2012 U.S. Dist. LEXIS 178966 (E.D. Va. 2012) . . . . . . . . . . . . . . . . . . . . .24

*COMSAT Corp. v. National Sci. Found.*,
    190 F.3d 269 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dixon v. Coburg Dairy, Inc.*,
    369 F.3d 811 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Elecs. of North Carolina, Inc. v. S.E. Power Admin.*,
    774 F.2d 1262 (4th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*FDIC v. Meyer*,
    510 U.S. 471, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) . . . . . . . . . . . . . .46

*FMC Corp. v. Holliday*,
    498 U.S. 52, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990) . . . . . . . . . . . . . . .46

*Garcia v. Neagle*,
    660 F.2d 983 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Gerard Construction, Inc. v. M/V VIRGINIA*,
    480 F. Supp. 488 (W.D. Pa. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Gibson v. Berryhill*,
 411 U.S. 564, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973) . . . . . . . . . . . . . . . .28

*Giuseppe Bottiglieri Shipping Co. S.p.A. v. United States*,
 843 F. Supp. 2d 1241 (S.D. Ala. 2012) . . . . . . . . . . . . . . . . .20-21, 30, 31, 50

*Heckler v. Chaney*,
 470 U.S. 821, 84 L. Ed. 2d 714, 105 S. Ct. 1649 (1985) . . . . . . . . . . . . . .32

*Houghton v. Shafer*,
 392 U.S. 639, 88 S. Ct. 2119, 20 L. Ed. 2d 1319, (1968) . . . . . . . . . . .28-29

*In re Grand Jury Proceedings re: Investigation of Blow Wind Shipping S.A.*,
 10-mj-57-P-JHR (D. Me. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Inova Alexandria Hospital v. Shalala*,
 244 F.3d 342 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 36

*K Mart Corp. v. Cartier, Inc.*,
 486 U.S. 281, 108 S. Ct. 1811, 100 L. Ed. 2d 313 (1988) . . . . . . . . . . . . .46

*Kriton Maritime S.A. v. United States of America*,
 No. 3:07-cv-461 (D. Conn. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Lantra Shipping Ltd. v. United States*,
 No. H-11-cv-4637 (S.D. Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lee v. United States Citizenship & Immigration Servs.*,
 592 F.3d 612 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Littell v. Morton*,
 445 F.2d 1207 (4th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Makar v. Health Care Corp.*,
 872 F.2d 80 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Marbury v. Madison*,
 5 U.S. 137, 2 L. Ed. 60, 1 Cranch 137 . . . . . . . . . . . . . . . . . . . . . . . . 25-26

*Mathews v. Eldridge*,
424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) . . . . . . . . . . . . . . . . . .10

*McDonald v. Centra, Inc.*,
946 F.2d 1059 (4th Cir. 1991),
*cert. denied*, 119 L. Ed. 2d 244, 112 S. Ct. 2325 (1992) . . . . . . . . . . . . . .24

*Menkes v. Dep't of Homeland Sec.*,
486 F.3d 1307 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

*Mercator Lines Ltd. (Sing.) PTE Ltd. v. M/V GAURAV PREM*,
2011 U.S. Dist. LEXIS 153429 (S.D. Ala. 2011) . . . . . . . . . . . . . . . . . . . 27

*Merchants Nat'l Bank v. Dredge Gen. G.L. Gillespie*,
663 F.2d 1338 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Midwest Video Corp. v. FCC*,
571 F.2d 1025 (8th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Morrissey v. Brewer*,
408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) . . . . . . . . . . . . . . 33

*Nat'l Labor Relations Bd. v. Un. Food & Comm. Workers Union*,
484 U.S. 112, 108 S. Ct. 413, 98 L. Ed. 429 (1987) . . . . . . . . . . . . . . . . . 37

*Nimmrich & Prahm Reederei Gmbh v. United States*,
2012 U.S. Dist. LEXIS 65101 (S.D.Tex. 2012) . . . . . . . . . . . . . . . . . . . . .21

*Norfolk Southern Ry. Co. v. Kirby Pty Ltd.*,
543 U.S. 14, 125 S. Ct. 385, 160 L. Ed. 283 (2004) . . . . . . . . . . . . . . . 43, 44

*Olmstead v. United States*,
277 U.S. 438 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Overstreet v. W/V NORKONG*,
706 F.2d 641 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Padula v. Webster*,
822 F.2d 97 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
    469 U.S. 189, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985) . . . . . . . . . . . . . . . 46

*Perrin v. United States*,
    444 U.S. 37, 100 S. Ct. 311, 62 L. Ed 2d 199 (1979) . . . . . . . . . . . . . . . . 45

*Porina v. Marward Shipping Co.*,
    521 F.3d 122 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Randolph-Sheppard Vendors of Am. v. Weinberger*,
    795 F.2d 90 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

*Rubin v. United States*,
    449 U.S. 424, 101 S. Ct. 698, 66 L. Ed. 2d 633 (1981) . . . . . . . . . . . 45-46

*Sackett v. EPA*,
    __ U.S. __, 132 S. Ct. 1367, 182 L. Ed. 2d 367 (2012) . . . . . . . . . 33-34, 39

*Schooner Paulina's Cargo v. United States*,
    11 U.S. 52, 3 L. Ed. 266, 7 Cranch 52 (1812) . . . . . . . . . . . . . . . . . . . . . 46

*Shipbuilders Council of Am., Inc. v. United States Dep't of Homeland Sec.*,
    673 F. Supp. 2d 438 (E.D. Va. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

*Slachev v. Royal Caribbean Cruises, Ltd.*,
    559 F.3d 251 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Southern R. Co. v. Columbia Compress Co.*,
    280 F. 344 (4th Cir. 1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Speed Mining, Inc. v. Federal Mine Safety and Health Review Comm'n*,
    528 F.3d 310 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35-36

*Thetford Properties IV Ltd. Partnership v. U.S. Dep't of Housing & Urban Dev.*,
    907 F.2d 445 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transport*
    *N.V.*, 572 F.3d 96 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Abrogar*,
    459 F.3d 430 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 47

*United States v. Bevilacqua*,
    441 F.3d 124 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Dalnave Navigation*,
    2009 U.S. Dist. LEXIS 21765 (D. N.J. 2009) . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Ionia Management S.A.*,
    555 F. 3d 303 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 47

*United States v. Jho*,
    534 F.3d 398 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11-12, 47

*United States v. Kassian Maritime Navigation Agency, Inc.*,
    No. 2:13-cr-70 (E.D. Va. June 10, 2013) . . . . . . . . . . . . . . . . . . . . . . . .5, 15

*United States v. Lemissoler Shipmanagement Ltd.*,
    No. 10-mj-86-JHR (D. Maine 2010) . . . . . . . . . . . . . . . . . . . . . . . . . .16

*United States v. OMI Corporation*,
    No. 04-cr-00060 (D. N.J. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*United States v. Overseas Shipholding Group, Inc.*,
    No. 06-cr-10408 (D. Mass. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Schroder*,
    2006 U.S. Dist. LEXIS 94070 (S.D. Ala. 2006) . . . . . . . . . . . . . . . . . . . . 6

*United States v. Singh*,
    518 F. 3d 236 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*United States v. Target Ship Management Pte., Ltd.*,
    No. 11-cr-368-KD-N (S.D. Ala. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Wallenius Ship Management PTE. Ltd.*
    No. 06-cr-00213 (D. N.J. Aug. 3, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

x

*United States v. Weaver*,
  659 F.3d 353 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Wuagneaux*,
  683 F.2d 1343 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*University of Maryland v. Cleland*,
  621 F.2d 98 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*West v. Bergland*, 611 F.2d 710 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . .28

*Wilmina Shipping AS v. United States*,
  2010 U.S. Dist. LEXIS 49172 (S.D. Tex. 2010) . . . . . . . . . . . . . . . . . . . . . 21

*Yousefi v. United States INS*,
  260 F.3d 318 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

**STATUTES:**

5 U.S.C. §§ 701, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

5 U.S.C. § 701(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30, 32

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 38

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

5 U.S.C. § 706(2)(C)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

14 U.S.C. § 89a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 1505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 1519 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 19

28 U.S.C. § 1333 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 42

33 U.S.C. § 1904(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

33 U.S.C. § 1908(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

33 U.S.C. § 1908(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

33 U.S.C. § 1910 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39-40

33 U.S.C. § 1910(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

38 U.S.C. § 211(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

46 U.S.C. § 60105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

**RULES:**

FED. R. APP. P. 4(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

FED. R. CIV. P. SUPP. R. E(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41, 42, 43

FED. R. CIV. P. SUPP. R. E(5)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

FED. R. CIV. P. SUPP. R. E(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**REGULATIONS:**

33 C.F.R. § 160.7(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23, 28

33 C.F.R. § 160.7(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

33 C.F.R. § 160.7(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

33 C.F.R. § 160.7(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

46 C.F.R. § 1.03-20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**LEGISLATIVE MATERIALS:**

H. R. No. 96-1224 *reprinted in* 1980 U.S.C.C.A.N. 4849 . . . . . . . . . . . . . . . 47, 48

H.R. 6665, 96th Cong. (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945) . . . . . . . . . . . . . . . . . . . .32, 38-39

**OTHER AUTHORITIES:**

7A Moore's Federal Practice P. E. 13(2) (2d ed. 1979) . . . . . . . . . . . . . . . . . . . 41

Black's Law Dictionary 1483 (9th Ed. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . .47

Concise Oxford Dictionary of Current English (9th ed. 1995) . . . . . . . . . . . . . 47

Lewis Carroll, Through the Looking-Glass (and What Alice Found There)
     (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .50

U.S. Sentencing Guidelines Manual § 8C3.3(b) . . . . . . . . . . . . . . . . . . . . . . . . 40

## STATEMENT OF JURISDICTION

The United States District Court for the Eastern District of Virginia had subject matter jurisdiction in the matter by virtue of Federal Question Jurisdiction under 28 U.S.C. § 1331 and the Administrative Procedure Act ("APA") 5 U.S.C. §§ 701, *et seq.* The District Court also properly exercised its admiralty jurisdiction under 28 U.S.C. § 1333.

This Honorable Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 because it results from a final decision of the District Court. On May 8, 2013, the District Court issued an Order and Memorandum Opinion which directed that upon the posting of a bond (with certain uncontested conditions), the government was to release the Vessel from detention and return its departure clearance so as to allow the M/V ANTONIS G. PAPPADAKIS to depart the Eastern District of Virginia to continue her journey and trade. Within the period allowed by Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure, the government filed its Notice of Appeal on May 9, 2013. JA 640.

## STATEMENT OF THE ISSUES

(1) Whether the District Court properly exercised subject matter jurisdiction; (2) whether the District Court properly interpreted 33 U.S.C. § 1908(e) of the Act to Prevent Pollution from Ships ("APPS") finding that the Coast Guard had exceeded its statutory authority; (3) whether the Coast Guard abused its limited

1

discretion through its interpretation and application of 33 U.S.C. § 1908(e); and (4) whether the Coast Guard violated Petitioner-Appellee's due process rights. The answer is "yes" on all counts.

**STATEMENT OF THE CASE**

The District Court action was commenced on April 25, 2013 by Petitioner-Appellee, Angelex Ltd. ("Angelex"), as owner of the M/V ANTONIS G. PAPPADAKIS ("the Vessel"), and the M/V ANTONIS G. PAPPADAKIS, *in rem*, by the filing of an Emergency Petition and Motion in the United States District Court for the Eastern District of Virginia, seeking judicial intervention to address the United States Coast Guard's (hereinafter "USCG" or "Coast Guard") imposition of an impermissible and overly broad interpretation of 33 U.S.C. § 1908(e) of APPS. JA6-35. Specifically, 33 U.S.C. §1908(e) provides in relevant part:

> . . . [i]f reasonable cause exists to believe that the ship, its owner, operator, or person in charge may be subject to a fine or civil penalty under this Section, the Secretary of the Treasury, upon the request of the Secretary, shall refuse or revoke the clearance required by section 60105 of title 46. Clearance may be granted upon the filing of ***a bond or other surety satisfactory to the Secretary***.

*Id*. (emphasis added). The statute provides on what basis the Coast Guard may obtain from the Vessel the posting of a bond or other financial surety to ensure the payment of a fine or penalty that *might* be incurred. The statute is clearly written in the disjunctive, and must be given its plain and ordinary meaning, *i.e*. the Coast

2

Guard may demand a bond or another type of financial security instrument which ensures payment of a potential criminal fine or civil penalty.

The Coast Guard exceeded its statutory authority and abused its discretion by requiring a surety bond in excess of the maximum fine or penalty and by arbitrarily imposing other conditions beyond the scope of its authority which included: (1) the waiver of personal jurisdiction challenges and defenses; (2) the detention of crewmembers identified by the Coast Guard for an unlimited time; (3) payment of the total wages, lodging costs, transportation costs, medical care costs, and a per diem for each of the detained crewmembers during the indefinite detention period (without regard to the end date of their individual employment contracts); (4) encourage the crewmembers to cooperate with the government, even if represented by independent counsel or were the subjects/targets of criminal investigation; (5) take custody of the crewmembers' passports for safekeeping and notify counsel for the government if crewmembers requested their return; (6) stipulate to the authenticity of documents and items removed from the Vessel; (7) facilitate and assist the government in effecting service of Grand Jury and/or trial subpoenas on shore-side foreign nationals who are employees of the Owner, who are not United States citizens, and who reside outside the United States; (8) bring a custodian of records to the United States to authenticate documents before a Grand Jury; (9) agree to enter an appearance in any civil or criminal

3

charges that are filed; (10) agree to repatriate the crewmembers to their home countries when the government determines their presence is no longer necessary in the United States. JA609-19.

Neither the statute nor its legislative history authorizes such conditions and, therefore, the Coast Guard has exceeded its statutory authority, and abused its discretion.

## STATEMENT OF FACTS

### A.    Factual Background

The ANTONIS G. PAPPADAKIS is an ocean going bulk cargo carrier, built in 1995, registered in Malta and operating pursuant to the laws and authority of her flag state - Malta.  JA8.  Angelex, purchased and took delivery of the vessel on or about March 9, 2007.  Since such time, the Vessel has made approximately one-hundred seventy three port calls around the world at the direction of various third party "charterers."[1]  The Vessel is the sole income-earning asset of Angelex.  JA7 at n. 2; JA 164.    Angelex contracted with a third-party, Kassian Maritime

---

[1] "'Time charters' or 'charter parties' are contracts for the rental or 'hire' of a vessel by a lessee, called a "charterer," for a specified period." *Bergesen d.y. v. Lindholm*, 760 F. Supp. 976, 979 n. 1 (D. Ct. 1991). The movements of the vessel and port calls made are decisions exclusively by the charterer. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 128 (2d Cir. 2008).

Navigation Agency, Ltd. (hereinafter "Kassian"), to serve as the vessel's manager. Kassian is a Greek company and is not a party to this case. JA1-5.[2]

On April 14, 2013, the ANTONIS G. PAPPADAKIS, following orders of its charterer, United Bulk Carriers International, arrived at the Norfolk Southern Terminal and loaded a cargo of coal for delivery to a customer of the Vessel's charterer in Brazil.  JA8.   On April 15, 2013, Coast Guard inspectors attended on board the Vessel to conduct a routine Port State Control Inspection.  JA9.  While Coast Guard personnel were on board, a crewmember passed a note to one of the inspectors, alleging that the Vessel's oily water separator had been bypassed and oily bilge water had been discharged overboard, without being recorded in the Vessel's Oil Record Book.   JA626.  It is well known throughout the shipping industry that "whistleblowers" complaining of the use of a "magic pipe" to by-pass

---

[2] Kassian is the Vessel's International Safety Management ("ISM") manager, but does not have any proprietary interest in the Vessel and does not employ any of the crewmembers onboard.  Lacking substantive legal authority for its position, the government misguidedly attempts to inflame this Court by painting Kassian in disparaging and scurrilous terms.  *See* Appellant's Brief at pp. 13-16, 56-58.  The government's hysterical allegations (which have yet to be proven) are not made for any legitimate purpose in support of the legal issues before this Court.  Rather, they are made to prejudice the Court.  The government's commentary concerning Kassian's previous voluntary acceptance of criminal responsibility for unrelated conduct involving a different vessel, owned by a different owner, is irrelevant to this dispute and should be disregarded in its entirety.  Kassian was improperly charged for alleged acts and/or omissions of employees of Angelex and has filed a motion to dismiss the indictment issued against it for lack of jurisdiction, which is presently *sub judice*.  *See United States v. Kassian Maritime Navigation Agency, Inc.*, No. 2:13-cr-70-1 (E.D. Va. June 9, 2013) at Doc. #24.

shipboard pollution prevention equipment receive huge reward payments up to half the amount of any fine or penalty to be paid in the United States.[3] *Id.*, n. 1.

Over the next several days, Coast Guard agents engaged in an expanded MARPOL inspection and investigation. JA9. During the course of this investigation, the USCG officers and agents, including agents from the Coast Guard Investigative Service ("CGIS")[4] misled the Vessel's crew as to the true nature of their continued investigation; conducted repeated interviews of the Vessel's crew (without the benefit of counsel's presence), and confiscated numerous records, materials, and other physical evidence from the Vessel; all (purportedly) under the authority of 14 U.S.C. § 89a.[5] JA9.

On April 19, 2013, the Coast Guard's Captain of the Port for Hampton Roads, J.K. Little, issued a letter advising that the United States Customs and Border Protection Agency ("CBP"), at his request, was withholding the Vessel's

---

[3] *See e.g. United States v. OMI Corporation*, No. 04-cr-00060 (D. N.J. 2004) (one whistleblower received $2.1 million); *United States v. Wallenius Ship Management PTE. Ltd.*, No. 06-cr-00213 (D. N.J. 2006) (four whistleblowers shared an award of $2.5 million); *United States v. Overseas Shipholding Group, Inc.*, No. 06-cr-10408 (D. Mass 2007) (twelve whistleblowers each received $437,500).

[4] CGIS is a federal law enforcement agency established to carry out the Coast Guard's criminal investigations. *See* www.uscg.mil/hq/cg2/cgis/.

[5] The Coast Guard's investigation is likely to become an issue in the pending criminal proceedings, as USCG investigators appear to have impermissibly "affirmatively misled" the crew as to the true nature and substance of the investigation. *See, e.g., United States v. Schroder*, 2006 U.S. Dist. LEXIS 94070, *7-9 (S.D. Ala. 2006) (citing *United States v. Wuagneux,* 683 F.2d 1343, 1347 (11th Cir. 1982)).

departure clearance pursuant to 33 U.S.C. § 1908(e). JA12; JA68; JA626-27. The final attendance onboard the Vessel by the Coast Guard to conduct its investigation was sometime before the issuance of Captain Little's letter at approximately 7:00 p.m. on the evening of Friday, April 19, 2013. Said another way, by April 19, 2013, the investigation was completed; all documentary and physical evidence was seized from the Vessel and in the government's possession; and the matter had been referred and accepted for prosecution by the Department of Justice.

Following delivery of Captain Little's letter, counsel for Angelex promptly contacted Lieutenant Elizabeth Oliveira of the Coast Guard's Fifth District Legal Office, in accordance with the express instructions the letter. JA12 at ¶ 26; JA36-37, at ¶¶ 14-16; JA89. Lieutenant Oliveira advised she had no authority to discuss or negotiate terms, and the Coast Guard would be unable to meaningfully discuss its requirements for the reinstatement of the Vessel's departure clearance until Monday, April 22, at the earliest. JA13 at ¶ 27; JA89.

On Monday, April 22, counsel for Angelex sought to negotiate an "agreement" which would provide security for a possible fine or penalty that might be imposed, (if any), and allow Angelex's sole income producing asset, the M/V ANTONIS G. PAPPADAKIS to depart the District and continue her journey and trade. JA70-156. Lieutenant Oliveira initially advised she anticipated the Coast Guard would require the entire engine room crew and the Master to be

7

disembarked and "maintained" in the District by the Owner **and** Operator of the Vessel, at their cost, (for an unspecified period of time), as well as a monetary undertaking in an unspecified form (*i.e.* – a bond or other surety such as a cash remittance to the Registry of the Court, a P&I Club Letter of Undertaking, an irrevocable letter of credit, etc.) in the range of USD 3 – 4 million. JA98. Counsel for Angelex advised that such demand was unjustifiable; and neither Angelex (nor the Vessel's ISM manager, Kassian), had the financial ability (either jointly or severally), to meet these demands. *Id*. The Coast Guard was requested to provide a clear statement of what it would accept as "satisfactory surety." JA98.

In response, the Coast Guard provided a comprehensive form document entitled "Agreement on Security", which required, *inter alia*, Angelex to post a surety bond in the amount of USD 3 million. JA38 at ¶ 19; JA177-187. In addition, the Coast Guard insisted upon numerous statutorily impermissible and unconscionable terms and conditions, well beyond the scope of its statutory authority. The Coast Guard insisted that Angelex, agree to waive rights and defenses, including personal jurisdiction defenses; undertake actions to confiscate the passports of seven (7) crewmembers and functionally detain them in the Eastern District of Virginia for an unlimited period of time; bear all expenses for the detention, including payment of the crewmembers' lodging and meals; continue the employment of the crewmembers (who are accused of breaking the

8

company's rules <u>and</u> the law); continue paying total wages, benefits, and healthcare (and/or health insurance), for such crewmembers during their functional detention; and to require (and pay for) a custodian of the records to travel to the United States to testify as to the authenticity of any records produced pursuant to subpoenas issued by the government. JA177-187; *see also* JA15-16 at ¶ 39; JA627.[6]

After receiving the Coast Guard's proposal, Angelex (as Owner of the Vessel and employer of the seafarers[7] for whose conduct Angelex is being charged), responded that it is financially incapable of meeting the demand for a USD 3 million bond. Angelex counter-offered a USD 500,000[8] cash bond and a number of "red-lined" amendments to the proposed "security agreement." JA117; JA189-199. In reply, Lieutenant Oliveira advised that absolutely <u>none</u> of the substantive changes proposed would be acceptable. JA131. Subsequently, the Coast Guard reduced its bond demand to USD 2.5 million, but was unwavering in its other demands. Ultimately, Angelex offered to post either a USD 750,000 cash

---

[6] Such conditions are beyond the Coast Guard's authority and impermissibly serve to require Angelex to underwrite the cost of the government's prosecution. There is no statute which authorizes the Coast Guard to pass the costs of prosecution to a putative defendant. *See United States v. Bevilacqua,* 441 F.3d 124, 127 (1st Cir. 2006).

[7] It is well-established that seamen are a "historically protected class." *Caldwell v. Solus Ocean Systems, Inc.*, 734 F.2d 1121, 1123 (5th Cir. 1984).

[8] In support, the Coast Guard was provided with a robust set of financial records on April 24, 2013 by Angelex demonstrating it only had USD 770,000 (approximately) in cash reserves available. JA154, JA463-595.

9

bond – substantially all of Angelex's free cash on hand – or a USD 1.5 million surety bond (*i.e.* the maximum attainable fine or penalty in this case) and voluntarily agree to various unobjectionable non-monetary conditions relating to payment of lodging and meal expenses for former crewmembers of interest. JA624.

### B.    Applicable Statute - 33 U.S.C. § 1908(e)

The government, without legal or factual basis, alleges that 33 U.S.C. § 1908(e) provides un-reviewable discretionary authority to the Coast Guard to impose and demand monetary **and** non-monetary terms and conditions on an Owner of a Vessel seeking to have the Vessel's departure clearance reinstated. If there was such legal, statutory, and/or regulatory authority for the Coast Guard's actions, the government would set forth the authorities relied upon, chapter and verse. The government fails to cite to any such authority. *See* Appellant's Brief at p. 12. Instead, the Coast Guard attempted to coerce Vessel interests into signing an unauthorized and self-serving "Agreement on Security" which is beyond its statutory authority. The government's argument is that the end justifies the means, and the Coast Guard should be permitted to exceed its statutory authority.[9]

---

[9] To give effect to the government's interpretation of the statute is to impose a pre-judgment, non-recourse penalty on the vessel owner and operator which is not countenanced by the Constitution, this statute, or any other statute. *See Mathews v. Eldridg*e, 424 U.S. 319, 333, 96 S. Ct. 893; 47 L. Ed. 2d 18 (1976) (holding a

33 U.S.C. § 1908(e), both on its plain and ordinary reading and in its legislative history, confirms that it was the intent of Congress for financial security to be posted for a potential criminal fine or civil penalty to sit in place of the Vessel, *in rem*.[10]   Review of the limited case law interpreting APPS actually demonstrates that the application of the statutory regime has always been intended by Congress to applied, *in rem,* to foreign flagged vessels.  *See United States v. Ionia Management S.A.*, 555 F. 3d 303, 309 (2d Cir. 2009) (holding that "The APPS's requirement that subject ships 'maintain' an ORB, 33 C.F.R. § 151.25, mandates that these ships ensure that their ORBS are accurate (or at least not knowingly inaccurate) upon entering the ports or navigable waters of the United States.") (emphasis added); *United States v. Jho*, 534 F.3d 398, 403 (5th Cir. 2008) ("we read the requirement that an oil record book be 'maintained' as imposing a duty upon a foreign-flagged vessel to ensure that its oil record book is accurate (or

---

penalty cannot be imposed by the government until the accused is provided with notice of the alleged violation and a full and fair opportunity to be heard).

[10] The government repeatedly (and mistakenly) asserts that the Vessel cannot have its departure clearance reinstated without Angelex **and** Kassian agreeing to be jointly and severally liable under the terms of the "Agreement on Security" and 'voluntarily' agree to *inter alia*, the waiver of rights and defenses.  *See* Appellants Brief at pp. 27-30. However, the continued physical presence of the Vessel through the ongoing functional detention by the Coast Guard does **not** provide personal jurisdiction over either Angelex or Kassian.  Rather, there is jurisdiction *in rem* over the Vessel, and at best, *quasi-in-rem* jurisdiction over Angelex as Owner of the Vessel.   Notwithstanding, Angelex has not disputed the jurisdiction of the Court and will be answering and defending the Indictment against it. There is no personal jurisdiction over Kassian. *See* n. 2, *supra*.

at least not knowingly inaccurate) upon entering the ports of navigable waters of the United States.") (emphasis added); *United States v. Abrogar*, 459 F.3d 430, 435 (3d Cir. 2006) ("[U]nder the APPS and accompanying regulations, Congress and the Coast Guard created criminal liability for foreign vessels and personnel only for those substantive violations of MARPOL that occur in U.S. ports or waters.") (emphasis added); *see also* Appellant's Brief at p. 13 ("the Coast Guard . . . negotiates with the vessel").

The government's argument that the Coast Guard is entitled to impose terms and conditions which *inter alia*, require the waiver of jurisdictional challenges by Angelex (and Kassian) is clearly beyond the scope of authority sanctioned under the statute, intended by Congress, or acknowledged by the Courts as a purpose for the statutory scheme. Faced with the Coast Guard's intransigent "take-it-or-leave-it" terms set out in its proposed "agreement", and the inevitable catastrophic consequences of being inequitably driven out of business due to the Coast Guard's unsupportable demands, Angelex sought judicial intervention.

## C.  **The District Court Proceedings**

The Emergency Petition and Motion was filed on April 25, 2013 (JA1-35). The government filed its Opposition on May 2, 2013. JA2 at Doc. 15. On May 6, 2013, the parties appeared for a lengthy hearing before District Court Judge Doumar. JA323-461. After hearing from counsel and encouraging both sides to

resolve the matter, the Court recessed for a period of several hours to allow the parties to meet, confer, and make a final effort to amicably resolve the standstill.[11] JA628. During these discussions, counsel for Angelex and LCDR Andrew Grant, (the senior ranking officer from the Coast Guard Fifth District Legal Office at the hearing), reached an agreement in principle on a USD 1.5 million bond, plus other agreed conditions. *Id.* When the Court reconvened the hearing, counsel for the government astonishingly advised the Court that the agreed terms had been rejected by Coast Guard Headquarters in Washington, D.C. *Id.* The government stated the Coast Guard would firmly refuse to accept anything less than the USD 2.5 million bond it had previously demanded **and** the other onerous and statutorily impermissible terms and conditions which required Angelex to, *inter alia*, waive significant rights and defenses, to trample the rights of the Vessel's seafarers, and effectively pay the costs of its own prosecution. JA629.

On May 8, 2013, Judge Doumar issued an Order directing Angelex to post a surety bond in the sum of USD 1.5 million (*i.e.* the maximum fine or penalty

---

[11] The government makes shameful and disparaging attacks on the District Court in an apparent attempt to improperly influence and prejudice this Court's review of the actual issues pending on appeal. *See* Appellant's Brief at n. 9. Whatever comments made by District Judge Doumar were an obvious attempt to challenge both sides and promote a settlement, as evidenced by the three (3) hour break during the hearing to have the parties discuss a potential resolution. The comments at the hearing are not relevant to the District Court's well-reasoned factual findings and legal conclusions contained in the Order and Memorandum Opinion in support. This appeal must turn on the facts and the law; not on the government's prejudicial *ad hominem* attack on District Judge Doumar.

authorized in this matter) with several other agreed terms providing for the care and maintenance of the crew until FED. R. CRIM. P. 15 depositions were concluded. JA620-623; *see also* JA668-671 (bond and conditions approved by Judge Doumar). On the same date, Judge Doumar issued a sixteen (16) page Memorandum Opinion (JA624-639), finding that "[i]n more than thirty years on the bench, [Judge Doumar could] recall seeing no greater disregard for due process, nor any more egregious abdication of the reasonable exercise of discretion." JA638. The District Court further found:

> . . . that it has subject matter jurisdiction, that the Coast Guard abused its discretion in demanding a $2.5 million bond as a condition for granting departure clearance to the Pappadakis **and** in demanding the imposition of additional non-monetary conditions unrelated to assuring payment of any finds or civil penalties, and that the petitioners have an absolute right to release of the vessel upon posting of adequate security.

JA639 (emphasis added).

Dissatisfied with the District Court's ruling, the government moved in the District Court for a stay of the Opinion and Order (JA642-67) and appealed the District Court's ruling. JA640. Judge Doumar denied the government's Motion to Stay on May 10, 2013 (JA674-677). Thereafter, a three (3) judge panel of this Court granted the government's request that this Court stay the release of the Vessel during the Fourth Circuit's expedited consideration of the appeal. JA5 at Doc. 29. The Vessel remains detained in Norfolk with her current crew also

14

detained onboard. Five (5) former crewmember "material witnesses" remain detained at motels in the Eastern District of Virginia and the former Chief Engineer of the Vessel, Lambros Katsipis, has been indicted and also remains detained at a motel within the District.[12]

## SUMMARY OF ARGUMENT

The District Court properly exercised jurisdiction both under (1) federal question review as permitted by 28 U.S.C. § 1331 and the APA, 5 U.S.C. §§ 701, *et seq*; and (2) the District Court's admiralty jurisdiction, 28 U.S.C. § 1333. The case arises from the Coast Guard's abuse of discretion and other impermissible demands which exceed the Coast Guard's statutory authority set out in, *inter alia*, 33 U.S.C. § 1908(e) of APPS. It provides as follows:

> (e) Ship clearance or permits: refusal or revocation; bond or other surety. If any ship subject to the MARPOL Protocol, Annex IV to the Antarctic Protocol, or this Act, its owner, operator, or person in charge is liable for a fine or civil penalty under this section, or if reasonable cause exists to believe that the ship, its owner, operator, or

---

[12] Shortly after the commencement of this appeal, on May 22, 2013, prosecutors sought and obtained an eight (8) count indictment by the Grand Jury against, *inter alia*, Angelex and Mr. Katsipis, the Vessel's former Chief Engineer. *See United States v. Kassian Maritime Navigation Agency, Inc.*, No. 2:13-cr-70 (E.D. Va. May 22, 2013) at Doc. #12. The indictment alleges one (1) count of conspiracy under 18 U.S.C. § 371; three (3) counts of falsification of records under 18 U.S.C. §§ 1519 and 2; three (3) counts of knowing failure to maintain an accurate oil record book under 33U.S.C. § 1908(a) and 18 U.S.C. § 2; and one (1) count of obstruction of justice under 18 U.S.C. §§ 1505 and 2. *Id.* All of the charges against Angelex are based solely on principles of vicarious criminal responsibility. *See United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008).

person in charge may be subject to a fine or civil penalty under this Section, the Secretary of the Treasury, upon the request of the Secretary, shall refuse or revoke the clearance required by section 60105 of title 46. Clearance may be granted upon the filing of a bond _**or**_ other surety satisfactory to the Secretary.

*Id.* (emphasis added).

In short, and as the District Court correctly found, 33 U.S.C. § 1908(e) authorizes the Coast Guard to request CBP to withhold a vessel's departure clearance if there is reasonable cause to believe that the ship, its owner, operator, or person in charge <u>may</u> be subject *to a fine* <u>or</u> *civil penalty* under APPS. Clearance may be granted and restored upon the filing of a *bond* **or** *other surety* satisfactory to the Secretary.  By its ordinary and natural meaning, the statute contemplates the reinstatement of vessel departure clearance upon the posting of financial security for the payment of a fine or penalty. The statute is unambiguously and purposefully written in the disjunctive.  The term "**or**" clearly means that the Coast Guard may accept a bond **or** some other form of financial guarantee in order to adequately secure payment of a fine or penalty.[13]

---

[13] 33 U.S.C. § 1908(e)'s phrase "or other surety" is to enable the reinstatement of customs departure clearance upon the posting of an adequate financial guarantee. This includes the posting of a bond (*see United States v. Target Ship Management Pte., Ltd.*, No. 11-cr-368-KD-N (S.D. Ala. 2011); -or- a cash remittance into the registry of the court; -or- a Letter of Undertaking; -or- the posting of a cash remittance into an agreed escrow account (*see United States v. Lemissoler Shipmanagement Ltd.*, No. 10-mj-86-JHR (D. Maine 2010).

16

The District Court properly found that neither the statute nor legislative history of APPS authorizes the Coast Guard to insist upon a payment guarantee **and** the imposition of other onerous and statutorily unauthorized obligations as a basis to withhold a vessel's departure clearance. JA636-37. The additional terms and conditions sought to be imposed by the Coast Guard in this matter (and other similar matters), have nothing to do with the ability of the Vessel (or any party which may post the bond) to satisfy a potential fine or penalty. *Id.* Consequently, the District Court properly found that the Coast Guard exceeded its authority by requiring Angelex to post financial security for the payment of a fine or penalty **and** "agree" to other non-monetary terms reaching far beyond the Coast Guard's authority, including the waiver of substantive rights and defenses, as a condition precedent for the return of the Vessel's departure clearance.

As the District Court set forth in its well-reasoned and comprehensive Memorandum Opinion: the Coast Guard exceeded its statutory authority; abused its discretion; acted unreasonably; acted arbitrarily and capriciously; trampled Petitioner-Appellee's (and the crew's) due process rights; arrested and/or otherwise functionally detained the Vessel **and** her crew; and found that Angelex and the M/V ANTONIS G. PAPPADAKIS (as well as her former and current[14] crew and

---

[14] All of the remaining crewmembers currently onboard the Vessel (who have no information relating to the alleged violation(s)) have been summarily and punitively denied permission by the government to disembark the Vessel since

others) are inequitably being caused to sustain serious irreparable harm each day the Vessel remains idle in the port of Norfolk. JA631-32.

For the reasons set forth in the District Court Opinion and herein, it is respectfully submitted that the District Court's Order and Memorandum Opinion should be affirmed in all respects.

## ARGUMENT

## STANDARD OF REVIEW

The Fourth Circuit Court of Appeals reviews questions of subject matter jurisdiction *de novo*. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815 (4th Cir. 2004) (en banc). Issues of statutory interpretation are also reviewed *de novo*. *United States v. Weaver*, 659 F.3d 353, 356 (4th Cir. 2011). The District Court's Order (JA620-23), setting non-objectionable conditions for the surety bond (JA668-71) should be reviewed by this Court for abuse of discretion. *See Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transport N.V.*, 572 F.3d 96, 108 (2d Cir. 2009) (highlighting District Court's discretion to set or reduce a security to avoid the "substantial and unnecessary risk" of abuse of maritime arrest power); *see also* FED. R. CIV. P. SUPP. R. E(5)(a) (authorizing District Court to fix the principal sum of a bond to secure the release of detained property "in the event of the inability or refusal of the parties so to stipulate"); FED.

---

early May, despite each holding a valid U.S. visa, all in violation of the International Marine Organization ("IMO") Guidelines.

R. Civ. P. Supp. R. E(6) (permitting a Court to, for good cause shown, reduce the amount of security).

# I. THE DISTRICT COURT PROPERLY EXERCISED SUBJECT MATTER JURISDICTION

District Judge Doumar properly found that the Court had subject matter jurisdiction under the APA and federal question review **and** pursuant to the Court's admiralty jurisdiction; holding that the Court had the "jurisdiction to consider the dispute and order the requested relief." JA629-34; *see also* JA6-35.

## A. The APA Provides a Proper Basis for the Exercises of Subject Matter Jurisdiction.

The APA provided the District Court with subject matter jurisdiction in conjunction with 28 U.S.C. § 1331 over "final agency action." 5 U.S.C. § 704; *Lee v. United States Citizenship & Immigration Servs.*, 592 F.3d 612, 619 (4th Cir. 2010) (The APA does not create an independent grant of jurisdiction to bring suit, however, "the jurisdictional source for an action under the APA is the 'federal question' statute, which grants the district court 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States,' *see* 28 U.S.C. § 1331, and thereby 'confer[s] jurisdiction on federal courts to review agency action.'") (citing *Califano v. Sanders*, 430 U.S. 99, 107, 97 S. Ct. 980, 985, 51 L. Ed. 2d 192, 200 (1977)); *see also Borg-Warner Protective Serv. Corp. v.*

19

*EEOC*, 82 F. Supp. 2d 20, 25 n. 2 (D.D.C. 2000) ("[J]urisdiction over APA challenges to federal agency action is vested in district courts . . .").

### 1. The District Court properly found final agency action.

In reviewing the "take-it-or-leave-it" demands for an unattainable surety bond **and** other terms and conditions (including "voluntary" waiver of substantive jurisdictional rights and defenses), the District Court properly found that there was final agency action[15] sufficient to satisfy the jurisdictional requirement. JA630. The District Court followed other District Court Judges who have reviewed this issue. Specifically, Chief Judge William Steele, when considering the same issue held:

> The Government disputes the finality of the Coast Guard's position on the surety agreement, insisting that "surety negotiations are on-going." All indications are to the contrary. Indeed, the record reflects that the Coast Guard presented an ultimatum to the Owner on February 3. . . The Government has not suggested – and the record does not show – that the Coast Guard established these terms on a tentative or interlocutory basis, that it is amenable to further negotiation of them, or that it has been even slightly receptive to petitioners' recent efforts to reopen those discussions. ***Under any reasonable interpretation, the Coast Guard's final, non-negotiable, take-it-or-leave-it demand must satisfy the "final agency action" jurisdictional prerequisite for an APA challenge*** . . .

---

[15] The U.S. Supreme Court has provided guidance on the phrase "final agency action," holding: "[T]wo conditions must be satisfied for agency action to be "final": First, the action must mark the consummation of the agency's decisionmaking process . . . [a]nd second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997) (citations omitted); *see also COMSAT Corp. v. National Sci. Found.* 190 F.3d 269, 274 (4th Cir. 1999).

*Giuseppe Bottiglieri Shipping Co. S.p.A. v. United States*, 843 F. Supp. 2d 1241, 1247 (S.D. Ala. 2012) (emphasis added) (internal citations omitted).[16]

In a virtually identical matter in *Lantra Shipping Ltd. et al. v. United States of America*, No. H-11-cv-4637, (S.D. Tex. 2012), District Judge Vanessa Gilmore found, "[T]he Coast Guard has given its final offer and the petitioners have rejected it. So, as far as I'm concerned, I have a final agency action." JA233, p. 6, ll. 5-8. The Court distinguished *Wilmina* finding, "The distinction, I think, between this case and Judge Jack's case is that the parties were still in negotiation." *Id.*, ll. 16-19.

Here, the Coast Guard repeatedly represented to Angelex and to the Court, that the amount of the surety bond demanded (USD 2.5 million) **and** the other terms demanded for the reinstatement of the Vessel's departure clearance were completely nonnegotiable. JA630. The Coast Guard's "take-it-or-leave-it" nonnegotiable "Agreement" was the "consummation" of the Coast Guard's decision on the issue; its final determination of rights or obligations (or in this case

---

[16] The government's citations to District Court actions which found there was not final agency action are unavailing. *See* Appellant's Brief at p. 33, n. 10. The District Court properly rejected the government's argument as those cases are factually distinguishable. The parties represented that negotiations in those matters were "on-going." *See Wilmina Shipping AS v. United States*, 2010 U.S. Dist. LEXIS 49172 at *10 (S.D. Tex. 2010) ("there is no such final action here, as the parties remain in negotiations over the Security Agreement."); *Nimmrich & Prahm Reederei Gmbh v. United States*, 2012 U.S. Dist. LEXIS 65101 at *11-12 (S.D. Tex. 2012) (Coast Guard represented that it remained "willing to negotiate.").

the waiver thereof); and the Coast Guard's final act producing legal consequences to Angelex and the Vessel.

The availability of judicial review of final agency action is presumed, as the APA "embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S. Ct. 1507, 1511, 18 L. Ed. 2d 681, 687 (1967) (quoting 5 U.S.C. § 702); *see also* 5 U.S.C. § 706(2)(C),(D) (a Court must vacate agency action should it be determined the agency acted "in excess of statutory jurisdiction, authority, or limitations. . ."). When determining whether an administrative action is subject to judicial review, the Court is to give the APA's "generous" review provisions a "hospitable" interpretation. *Abbott Labs.*, 387 U.S. at 141.

In its brief, the government half-heartedly contests that the Court should not treat the Coast Guard's "take-it-or-leave-it" demands for the "Agreement on Security" as final agency action, on the speculation that it would then lead to "fruitless" negotiations in the future and provide other vessel interests with a "roadmap" to obtaining judicial review. *See* Appellant's Brief at p. 43. This argument should not and cannot be well received, as it is wholly unsupported and grossly misstates the facts of this case. Again, here, there was no meaningful negotiation of the "Agreement" by the Coast Guard; which was an arbitrary and

22

capricious abuse of discretion, beyond the scope of the agency's statutory authority. JA630.  The Court properly found final agency action, and also found that Coast Guard Headquarters, mandated the financial **and** "other" terms required for the reinstatement of the Vessel's customs departure clearance and nothing else would do.   JA628-29 (District Court held, "the Coast Guard firmly refuses to accept less than the $2.5 million bond it had previously offered. ***That was that, and nothing else was acceptable***.") (emphasis added).[17]

## 2. Even if there had not been final agency action, the exceptions to the exhaustion requirement apply.

The government alleges that there could not have been final agency action (and judicial review is not available) on the basis that Angelex did not exhaust all intra-agency appeals of the Coast Guard.[18] *See* Appellant's Brief at pp. 43-44. However, the government and the Coast Guard do not argue, or even suggest, that an appeal through the administrative agency process (ultimately ending at Coast Guard Headquarters) would (or could) produce any different result. Indeed, it was

---

[17] Accordingly, any administrative appeal would be futile.  *See* pp. 27-29, *infra*.

[18] The first step of the administrative appeals process is to file a Request for Reconsideration, at the Sector level. *See* 46 C.F.R. § 1.03-20 and 33 C.F.R. § 160.7(a). Upon denial of the Request for Reconsideration, the next step is to appeal to the District Commander. *See* 33 C.F.R. § 160.7(b). Upon denial of the appeal by the District Commander, next is an appeal to the Area Commander. *See* 33 C.F.R. § 160.7(c). Upon denial of the appeal by the Area Commander, the matter must be appealed to the U.S. Coast Guard Assistant Commandant for Prevention, in Washington, D.C. *See* 33 C.F.R. § 160.7(d). This is the same office that sets the security agreements and forbid any changes or negotiation in this matter. As such, the exhaustion of the appeal process would be **entirely futile**.

Coast Guard Headquarters that rejected the resolution proposed on May 6, 2013 and flatly refused to permit any changes to the "Agreement."

Accordingly, the District Court properly held[19] that the Angelex was not required to exhaust the administrative appeal process. JA630-31. Specifically, the Court looked at the Fourth Circuit's enumerated exceptions to the exhaustion requirement:

> Exhaustion of administrative remedies is not required if: "(1) the dispute concerns statutory construction; (2) using administrative procedures would cause irreparable injury; (3) **resorting to administrative procedures would be futile**; (4) administrative remedies would be inadequate; or (5) the administrative decision would go unreviewed. (emphasis added).

*Id.* (*citing Clear Sky Car Wash, LLC. v. City of Chesapeake*, 2012 U.S. Dist. LEXIS 178966, at * 15 (E.D. Va. 2012)).[20]

The government makes no serious attempt to distinguish any of the exceptions listed by the District Court, and, instead, summarily dismisses them as "purported" exceptions. The government's lack of argument on this point and

---

[19] These factual findings were made, *inter alia*, on the government's confirmation that Coast Guard Headquarters was controlling the conditions of the "Agreement on Security", the Coast Guard's (impermissible) interpretation of the statute, and had rejected the proposed resolution. JA410-411.

[20] The government attempts to cast these exceptions as "purported." *See* Appellants' Brief at pp. 44-45. The fact that these exceptions have long been upheld by this Circuit in published opinions was apparently lost on the government. *See generally McDonald v. Centra, Inc.*, 946 F.2d 1059, 1063 (4th Cir. 1991), *cert. denied*, 112 S. Ct. 2325, 119 L. Ed. 2d 244 (1992).

24

insistence that the Coast Guard has absolute and unreviewable discretion (*see* Appellant's Brief at p. 45) is without merit under controlling Fourth Circuit law and precedent. Indeed, such a cavalier assertion offends against the principle of separation of powers as spelled out by the U.S. Supreme Court in *Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60, 1 Cranch 137 (1803).

Here, the District Court properly found that **all five** (5) exceptions to the exhaustion requirement are present in the instant matter and that each of them could provide a basis for review of the Coast Guard's agency action in this matter without exhaustion of the administrative remedies. JA631-33.

    a.    <u>*Statutory Construction*</u>

This case turns largely on statutory construction; specifically, the scope of the Coast Guard's statutory authority. JA6-35. As the District Court properly found, a challenge to the Coast Guard's erroneous statutory interpretation of its authority is an applicable exception to the otherwise mandated exhaustion requirement. JA631. Timely judicial review was and is appropriate, as questions of pure statutory interpretation are for the courts to ultimately address, and not administrative agencies. *See Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 843,104 S. Ct. 2778, 2781-82, 81 L. Ed. 2d 694, 702-03 (1986) ("the judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent"); *Marbury v.*

*Madison*, 5 U.S. 137, 177, 2 L. Ed. 60, 1 Cranch 137 (1803) (Marshall, C.J.) ("It is emphatically the province and duty of the judicial department to say what the law is.").

      b.   *Irreparable Injury*

The District Court further correctly found that absent judicial review, there would be irreparable injury suffered by Angelex, among others, as it surely would be doomed to financial ruin without the use of its only fee earning asset, the M/V ANTONIS G. PAPPADAKIS. JA631.    The Court also found that the crewmembers would be irreparably harmed by indefinite and unlimited functional detention. JA632.

The government glosses over the irreparable injury exception by stating for the first time on appeal that the "facts", specifically the financials provided by Angelex, are "disputed."    *See* Appellant's Brief, p. 45. No such challenge was presented to the District Court and the government provides no substantive basis to this Court to dispute the corporate financial records carefully considered by the District Court. JA463-595.  In addition it was readily conceded by the government that an administrative appeal would take no less than a year (JA443, ll. 22-23) and likely would take substantially more time. JA 444, ll. 13-24.  For certain, Angelex will be out of business prior to the conclusion of the Coast Guard's administrative appeals process. JA631.

Furthermore, the government once again erroneously contends that the crew members are not "detained." *See* Appellant's Brief, at p. 45.   Five (5) crewmembers have been taken off the ship, arrested as "material witnesses", and now remain detained at motels in the Eastern District of Virginia.[21]   Additionally, twenty-one (21) members of the crew (including replacement crew members for those residing ashore) continue to be detained on board the Vessel and have been denied the right to go ashore by the government, despite each having a valid U.S. visa.

c.   *Futility*

The administrative appeals process would be futile as the "Coast Guard has made it clear that USD 2.5 million is its firm and final bond demand" and remains unwavering on other terms demanded. JA629-30.  This position has come directly from  Coast  Guard  Headquarters  in  Washington  D.C.,  "rendering  any administrative appeal through the intermediate district and area levels of authority

---

[21]  In the "Agreement on Security", the Coast Guard attempted to mandate that Angelex require the crewmembers to disembark the vessel, turn over their passports, and remain "functionally detained" pending the prosecution of the case. The government routinely misrepresents to the Courts in these types of matters that the crewmembers are not detained by the terms of the "Agreement on Security," but rather remain in the jurisdiction "voluntarily." This absurd and factually dishonest contention has been rejected by every Court which has reviewed the issue.  JA621; *see, e.g.*, *Mercator Lines Ltd. (Sing.) PTE Ltd. v. M/V GAURAV PREM*, 2011 U.S. Dist. LEXIS 153429, *26-27 (S.D. Ala.  2011) (citing *In re Grand Jury Proceedings re: Investigation of Blow Wind Shipping, S.A.*, No. 10-mj-57-P-JHR, at *4 (D. Me. 2010)); *United States v. Dalnave Navigation*, 2009 U.S. Dist. LEXIS 21765, at *2 (D.N.J. 2009).

27

entirely futile." *Id*. The government has not and cannot dispute this, and cannot dispute that all of the authority for any appeal rests with Coast Guard Headquarters, who have made their position clear in this matter. JA446, ll 14-16; 33 C.F.R. § 160.7; *see also Thetford Properties IV Ltd. Partnership v. U.S. Dep't of Housing & Urban Dev.*, 907 F.2d 445, 450 (4th Cir. 1990) (Court held that the futility exception required "***a clear showing that an administrative agency has taken a hard and fast position that makes an adverse ruling a certainty***")(emphasis added); *West v. Bergland*, 611 F.2d 710, 719 (8th Cir. 1979) (stating that exhaustion of an administrative appeal would be futile when the issue being challenged is the agency's own long standing interpretation of a statute); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986) (holding the administrative appeals process, "would be futile because of certainty of an adverse decision.")

It is axiomatic that an administrative remedy is inadequate and the District Court may review in circumstances where it is demonstrated that appeal(s) through the agency process would be futile due to the bias of the administrative body or where the body has "predetermined" the issue before it. *Gibson* v. *Berryhill*, 411 U.S. 564, 575 n. 14, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973); *Houghton v. Shafer*, 392 U.S. 639, 640, 20 L. Ed. 2d 1319, 88 S. Ct. 2119 (1968) (in view of Attorney General's submission that the challenged rules of the prison were "validly and

correctly applied to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act"); *see also Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989).

Here, further agency review (*see* n. 18, *supra*) absolutely would be futile given that Coast Guard Headquarters dictates and controls the exact terms and conditions of all security agreements nationwide. Even if Angelex were to pursue a futile administrative appeal, which the government has admitted could take a year or more (JA443-44), Angelex will be out of business, the Vessel abandoned, and the former and current crew left to fend for themselves, all before a decision is rendered, irrespective of whether the putative defendants are convicted and a fine or penalty is imposed (or not).

     d.    *Inadequacy of Administrative Remedies*

Notably, the government has not seriously challenged the District Court's finding that any administrative remedies in this action would be inadequate based primarily upon the timing required for any administrative appeal to be resolved. JA632. If and when the administrative agency procedure has been exhausted, there will be nothing left of Angelex, a lawful ship-owning business, which will inevitably be bankrupted to the benefit of no one, not even the government. JA638. The Vessel will have been sold at auction and the mortgage bank will "scoop the pot" exercising its preferred lien. In this regard, the District Court wrote:

> Even if it was able to auction the vessel and recover full appraisal value (approximately $6.5 million), the Coast Guard still would not recover any fines or civil penalties owed.  After any expenses of justice during *custodia legis*, and seaman's wage liens, and satisfaction of the outstanding $10.65 million preferred mortgage lien on the ship, there would be nothing left to pay any fine or civil penalties assessed for violation of federal statutes.

JA632. (citations omitted).

     e.     <u>*The Administrative Decision Would Go Unreviewed*</u>

The District Court also found that that the administrative decision would be "moot" and go "unreviewed", as Angelex will have been forced out of business and the Vessel abandoned long before any appeal would be considered and the criminal matter would be resolved.  JA633.   Under such circumstances, exhaustion is not required.

**3.  The government's reliance on 5 U.S.C. § 701(a)(2) is misplaced.**

Relying on 5 U.S.C. § 701(a)(2), the government argues that setting surety conditions under APPS is "committed to agency discretion by law" and, as such, review of the Coast Guard's exercise of its discretion under § 1908(e) is barred under the APA.  *See* Appellant's Brief at pp. 38-41 (citing *Giuseppe Bottiglieri Shipping Co. S.P.A. v. United States*, 843 F. Supp. 2d 1241, 1248 (S.D. Ala. 2012)).

The District Court properly rejected these arguments, finding that court's decision in *Bottiglieri*[22] (*i.e.* – a non-binding district court case from outside this Circuit) is squarely "at odds with Fourth Circuit precedent, which holds to the contrary, that <u>even if a statute confers absolute discretion upon an agency, the federal courts retain jurisdiction to review discretionary agency actions for abuse of discretion.</u>" JA633 (emphasis added) (citing *Elecs. Of North Carolina, Inc. v. S.E. Power Admin.*, 774 F.2d 1262, 1267 (4th Cir. 1985); *Littell v. Morton*, 445 F.2d 1207, 1211 (4th Cir. 1971)). Notwithstanding, the government now argues that District Judge Doumar "misconstrued" these cases, and that conditions sought to be imposed by the Coast Guard "fall well within the scope of the statutory discretion Congress committed to the agency" and are unreviewable.

---

[22] The government relies upon the dicta contained in *Bottiglieri* to support its contention that 33 U.S.C. § 1908 grants the Coast Guard unfettered discretion to dictate the terms of the "Agreement on Security." *See* Appellant's Brief at p. 39. Because 33 U.S.C. § 1908(e) contains the words "satisfactory to the Secretary," the government reasons, there are no meaningful standards for a reviewing court to apply. *Id.* Likewise, the government asserts that judicial review is inappropriate and total deference to the Coast Guard's statutory interpretation is due because they are entrusted to administer APPS, and because they have the experience and expertise to interpret what Congress intended in respect to APPS. These arguments fail to recognize that "the existence of agency discretion, in itself, hardly constitutes grounds for concluding that agency action is unreviewable." *American Fed'n of Gov't Employees v. Donovan*, 638 F.2d 511, 515 (D.C. Cir. 1982) (finding that the language "as [the Assistant Secretary] considers appropriate" in an authorizing statute did not preclude judicial review under the APA. The mere presence of some discretion in 33 U.S.C. § 1908(e) does not preclude judicial review when the agency has exceeded its statutory authority and abused its discretion.

31

The government's attempts to distinguish the binding precedents of this Court, which were relied upon by the District Court in its Memorandum Opinion, are unavailing. As this Court noted in *Elecs. of North Carolina*, the exception provided by 5 U.S.C. § 701(a)(2) is a "narrow" one, and "instances of agency action that fall within the Section 701(a)(2) exception of the APA thereby escaping judicial review are rare." 774 F.2d at 1266, 1268.[23] Indeed, this Court has long recognized and held that "even where action is committed to <u>absolute</u> agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations." *Garcia v. Neagle*, 660 F.2d 983 (4th Cir. 1981) (emphasis added); *see also Heckler v. Chaney*, 470 U.S. 821, 84 L Ed. 2d 714, 105 S. Ct. 1649, (Brennan, J. concurring) ("an agency decision that violates a statutory or constitutional command is not immune from judicial review even when a lawful exercise of an agency's discretion has that immunity.").

The government concedes these limits to "absolute agency discretion" in its brief, but argues, without support or explanation, "none of these considerations applies in this action." *See* Appellant's Brief at p. 41. This is simply incorrect, as

---

[23] *See also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S. Ct. 814, 820, 28 L. Ed. 2d 136 (1971) (quoting S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)) (the legislative history of the APA indicates that § 701(a)(2) is only applicable in those **rare** instances where "statutes are drawn in such broad terms that in a given case there is no law to apply."). That is not the case here.

the very purpose for Angelex's pursuit of judicial intervention – and a significant basis for the District Court's decision – was the Coast Guard's actions beyond its statutory authority and its violation of Angelex's constitutional due process rights. *See generally* JA6-35; *see also* JA399 ("There isn't any question that there's no due process. Don't even mention the term 'due process.'  Anything between this and due process is right out the window. You haven't gotten any hearing. The only place you got a hearing is here."); JA638 (noting that the Coast Guard's "imposition of an unreasonable bond demand . . . without due process is simply repugnant to the Constitution").

The government argues that APPS does not provide "judicially manageable standards" against which to judge the Coast Guard's exercise of discretion.  *See Chaney*, 470 U.S. at 830. However, as this Court has noted, "it is well settled that even if agency action is committed to its discretion by law, a court may still determine whether the action is constitutional. . . .  This is because the Due Process Clause provides a manageable standard for review." *Inova Alexandria Hospital v. Shalala*, 244 F.3d 342, 347 (4th Cir. 2001) (citing *Padula v. Webster*, 822 F.2d 97, 101 (D.C. Cir. 1987); *Garcia v. Neagle*, 600 F.2d 983, 988 (4th Cir. 1981)).  *See also Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."); *Sackett v. EPA*, ___ U.S. ___, 132 S. Ct. 1367,

1375, 182 L. Ed. 2d 367 (2012) (Alito, J., concurring) (stating that the EPA's requirement for a party to do the "bidding" of an agency, acting beyond the scope of its statutory authority, without judicial review, "in a nation that values due process, not to mention private property . . . is unthinkable.").

The government's reliance on the limited Secretarial discretion in 33 U.S.C. §1908(e), conferred by the word "may"[24] with regards to Customs clearances, is also misplaced. *See* Appellant's Brief at p. 42. The government ignores the overarching requirement, supported by an abundance of precedent, that an agency's authority is **not** absolute and agency determinations **must** comply with the limits placed on the agency by the relevant statutes and regulations. *See Shipbuilders Council of Am., Inc. v. United States Dep't of Homeland Sec.*, 673 F. Supp. 2d 438, 448 (E.D. Va. 2009) (finding judicial review of the Coast Guard's

---

[24] Taken to its presumptive, logical extreme, the Coast Guard under its expansive and erroneous interpretation of the statute, (which the government contends is "unreviewable" by the Court), could condition the release of the vessel on any number of onerous conditions without regard to due process, including *inter alia*: the imposition of a 200 million dollar surety bond (JA350, ll. 3-13, government counsel asserting the Coast Guard does not have to be reasonable and could set a bond for 200 million dollars if it wanted to); effectively driving a lawful business into bankruptcy before any finding of liability, by demanding a surety bond which cannot be met by the Owner (a sentence that the Court does not even have the power to impose under the Sentencing Guidelines on a convicted organizational defendant (JA638)); and in the most extreme scenario, require the Owner to enter a guilty plea in a criminal case and if refused, its vessel would remain detained. The government's position that none of these abridgments of due process are entitled to any form of judicial review is clearly not what Congress intended in the language of 33 U.S.C. § 1908(e).

action appropriate and the agency's choices must be 'rational' and "within the parameters of sound administration" of a statute)(citing *Menkes v. Dep't of Homeland Sec.*, 486 F.3d 1307, 1311 (D.C. Cir. 2007)). As such, there is "law to apply"; the exception for action "committed to agency discretion" is inapplicable; and the legal question of whether the Coast Guard's interpretation of 33 U.S.C. § 1908(e) is reasonable in light of the plain language and purpose of the statute is entirely appropriate for judicial review in this case. *See* Point II, *infra*.

Finally, the government's reliance on this Court's decision in *Speed Mining, Inc. v. Federal Mine Safety and Health Review Comm'n*, 528 F.3d 310 (4th Cir. 2008) is misplaced. Although the Court concluded in that matter that the Secretary of Labor's enforcement decisions were committed to agency discretion by law and, therefore, unreviewable, the facts presented in *Speed Mining* are easily distinguished. In *Speed Mining*, the appellant was an owner-operator of a coal mine, who sought review of a final decision of the Federal Mine Safety and Health Review Commission, citing the appellant for violations committed by an independent contractor it engaged. *Id.* at 311. The Court's decision turned on the fact that the relevant provisions of the Federal Mine Safety and Health Act (*i.e.* – the statute at issue in *Speed Mining*) did not provide any meaningful standard for review. *Id.* at 317. Unlike the matter *sub judice*, however, there were no statutory construction, due process, or other constitutional concerns raised with respect to

35

the Secretary's action in *Speed Mining*. The appellant simply contended that the Secretary abused her discretionary authority by citing the appellant for independent contractor violations. By contrast, in this matter, the indisputable existence of specific statutory construction issues, various violations of its due process rights, and other constitutional concerns as a result of the Coast Guard's overreaching of its statutory authority, provide the District Court (and this Court) with a manageable standard for review of the Coast Guard's actions. *Inova Alexandria Hospital*, 244 F.3d at 347.

Again, neither APPS, nor its legislative history, authorizes the Coast Guard to withhold a vessel's customs departure clearance until the Owner posts both a financial guarantee beyond its means **and** "agrees" to other terms, including the waiver of substantive rights and defenses; none of which have anything to do with assuring payment of a fine or penalty that may be imposed.

### 4. Congress did not preclude judicial review of the Coast Guard's interpretation and application of 33 U.S.C. § 1908(e).

The government argues that Congress has granted the Coast Guard the exclusive authority to determine whether, and under what conditions, a vessel may be granted permission to leave a United States port and accordingly, that it may condition the release of a vessel suspected of violating APPS on the posting of a substantial surety bond **and** other conditions set out in the proposed "Agreement

36

on Security." *See* Appellant's Brief at pp. 34-38.  However, "Judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Labs.*, 387 U.S. at 140.   "The statutory preclusion of judicial review must be demonstrated clearly and convincingly." *Nat'l Labor Relations Bd. v. Un. Food & Comm. Workers Union*, 484 U.S. 112, 131, 108 S. Ct. 413, 425, 98 L. Ed. 2d 429, 446 (1987); *see also Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 672 n.3 (1986) ("'the [clear and convincing] standard serves as a useful reminder that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling.'") (quoting *Block v. Community Nutrition Institute*, 467 U.S. 340, 350-51, 104 S. Ct. 2450, 2456, 81 L. Ed. 2d 270, 278-79 (1984)).

Here, the Coast Guard has not and cannot "clearly and convincingly" demonstrate that Congress intended to preclude judicial review.  *See University of Maryland v. Cleland*, 621 F.2d 98, 100 (4th Cir. 1980) (example of clear and convincing intent to preclude review where the Court found, "[j]udicial review of a denial of benefits to an individual is clearly precluded" under statute which provided "no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise . . . .") (citing 38 U.S.C. § 211(a) (emphasis added)).   Instead, the

37

government is arguing, without citation to any authority, that once Coast Guard Headquarters dictates the terms and conditions of the release of a vessel, there is neither meaningful (*i.e.* non-futile) administrative appeals review, nor is there judicial review. Under the government's interpretation, the Coast Guard would have unilateral and unreviewable discretion to demand any terms and conditions, no matter how repugnant to due process and the Constitution. It was not and could not have been the intent of Congress to foreclose judicial review of unauthorized agency action of the Coast Guard under 33 U.S.C. § 1908(e), where meaningful (and timely) review would otherwise be unavailable, and a lawful ship owning company would be inequitably put out of business.

   a.   *33 U.S.C. § 1908(e) Does Not Bar Review*

   The government asserts the discretion afforded the Coast Guard's interpretation of 33 U.S.C. § 1908(e) precludes judicial review despite the fact that such review is expressly authorized by the APA. *See* 5 U.S.C. § 702.[25] The U.S. Supreme Court emphasized that "'[v]ery rarely do statutes withhold judicial review'"; otherwise, "'statutes would in effect be blank checks drawn to the credit of some administrative officer or board.'" *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 671 (1986) (quoting S. Rep. No. 752, 79th Cong., 1st

---

[25] "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

Sess. 26 (1945)); *see also Block v. Community Nutrition Institute*, 467 U.S. 340, 350-351, 104 S. Ct. 2450, 81 L. Ed. 2d 270 (1984)(holding that in passing the APA, the intent of Congress was to create an extremely strong presumption that agency actions are subject to judicial review). Here, there is no basis to conclude that Congress intended to foreclose judicial review.

In the recent opinion issued by the U.S. Supreme Court in *Sackett v. EPA*, Justice Scalia, writing the 9-0 decision of the Court, reaffirmed the presumption of judicial review under the APA. In *Sackett*, the Supreme Court held:

> The APA's presumption of ***judicial review is a repudiation of the principle that efficiency of regulation conquers all***. And there is no reason to think that the Clean Water Act was uniquely designed to enable the strong-arming of regulated parties into "voluntary compliance" without the opportunity for judicial review--even judicial review of the question whether the regulated party is within the EPA's jurisdiction.

*Sackett*, __ U.S.__, 132 S. Ct. 1367, 182 L. Ed. 2d 367, 376-77 (2012) (emphasis added).

**b.**    *There is no Congressional Intent to Bar Review of Agency Decisions under APPS*

Despite an obvious inability to cite to any element of APPS generally, or 33 U.S.C. § 1908(e), specifically, which "clearly and convincingly" precludes judicial review, the government argues that judicial review is unavailable pursuant to 33 U.S.C. § 1910, which specifies when "suit may be brought to challenge decisions

39

under APPS" (*See* Appellant's Brief. at pp. 35-36)[26] and 1904(h), which provides

an "after-the-fact" remedy for obtaining compensation from the government for

any misconduct. *Id*. at 37.[27]

However, neither ground is persuasive nor prevents the review and relief

Angelex sought in this matter.   Judicial intervention was sought pursuant to, *inter*

*alia*, the APA because without judicial review, Angelex's future would be doomed

and would be inequitably forced out of business[28] without due process as a result of

the Coast Guard's conduct which exceeded its statutory authority.

---

[26] Citing the "commencement conditions" of 33 U.S.C. § 1910(b), as prohibiting
legal proceedings when either: (1) a Plaintiff has not provided a 60-day notice
period; or (2) when the "Secretary or Administrator has commenced enforcement
or penalty action with respect to the alleged violation and is conducting such
procedures diligently". *Id.* However, civil actions under 33 U.S.C. § 1910 travel
under those decisions by the Secretary which are "non-discretionary," a category
of civil claims which are not at issue in the present action.

[27] 33 U.S.C. § 1904(h) states "[a] ship unreasonably detained or delayed by the
Secretary acting under the authority of this Act is entitled to compensation for any
loss or damage suffered thereby."

[28] This result the District Court found repugnant to the Constitution (JA638),
holding that it was unthinkable the Coast Guard could put a lawful company out of
business through un-reviewed agency action.  An action that would be prohibited
following a potential conviction. *Id.*, citing U.S.S.G. § 8C3.3(b). (restriction on
imposition of fine so substantial that it would 'jeopardize the continued viability of
the organization.').

**B. Admiralty Jurisdiction Was Properly Exercised by the District Court**

The District Court also properly exercised admiralty jurisdiction in this matter, holding:

> The only distinction between this functional arrest of the vessel and a proper maritime arrest is that in this case, absent the exercise of jurisdiction by this Court in the matter, the vessel and its owner have been denied any due process whatsoever. Because this matter involves a functional substitute for arrest of the vessel *in rem*, it falls within the Court's admiralty jurisdiction.

JA634. (citations omitted).

It is hornbook admiralty law that a vessel owner has the absolute right to obtain the release of the vessel upon the posting of adequate security. *See Gerard Construction, Inc. v. M/V VIRGINIA*, 480 F. Supp. 488, 491 (W.D. Pa. 1979)(citing to 7A Moore's Federal Practice P. E. 13(2)(2d ed. 1979); *see also* Supp. R. E(5). The right is an absolute right, which is not subject to the Court's discretion. *Id*., at 491; *see also* JA306 (p. 7, ll. 15-18), hearing in *Kriton Maritime S.A. v. United States of America*, No. 3:07-cv-461 (D. Conn. 2007) (District Judge Eginton, held "[T]he remedy, as given by the statute, is to post the bond, and the right to post the bond is absolute."). If the right to post a bond for the release of a vessel is absolute and not subject to the Court's discretion, it cannot be subject to the discretion of an agency, such as the Coast Guard. The government has not, and cannot, point to any authority to the contrary.

41

When a vessel is detained, the procedure set forth in Supplemental Rule E to set a bond ensures the vessel Owner's due process rights are protected. *See Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904, 912 (4th Cir. 1981); *Merchants Nat'l Bank v. Dredge Gen. G.L. Gillespie*, 663 F.2d 1338 (5th Cir. 1981). Federal courts have consistently and uniformly held that when security is posted in lieu of having a vessel detained, the underlying dispute giving rise to the claim falls within the admiralty jurisdiction of the District Court for the purposes of 28 U.S.C. § 1333. *See Cargill Ferrous Int'l v. M/V Medi Trader*, 513 F. Supp. 2d 609, 612-613 (E.D. La. 2007) (stating that the letter of undertaking issued in lieu of arrest of a vessel suffices to establish *in rem* jurisdiction over the vessel and proceedings brought *in rem* are distinctively admiralty proceedings).

In situations where, as here, terms for the posting of substitute security for a claim cannot be agreed, Supplemental Rule E requires the District Court to set a bond at an amount sufficient to cover the alleged claim before the Court at that moment. *See Overstreet v. W/V NORKONG*, 706 F.2d 641, 644 (5th Cir. 1983) The government's argument that this matter does not fall within the Court's admiralty jurisdiction is especially disingenuous given the Coast Guard's own insistence that Angelex agree to the following:

> Owner, Operator and the United States agree that the criminal and civil penalty claims of the United States against the Vessel in rem shall attach to the Vessel release's security as provided pursuant to the Federal Rules of Civil Procedure, Admiralty, Maritime Claims,

42

> Supplemental Rule E(5). In consideration of the Surety Bonds, the United States agrees not to cause the arrest of the Vessel, nor the arrest, seizure or attachment of any other vessel owned, operated, managed, or chartered by the Owner or Operator for the Alleged Violations, and not to withhold CBP departure clearance of the Vessel, or any other vessel under the same management and control of the Owner and Operator, on account of the Alleged Violations in the U.S. Coast Guard's letter to the Master of the Vessel dated April 19, 2013.

JA 185, ¶ 9.    Said another way, the Coast Guard in its security demands insists upon the application of the Supplemental Admiralty Rules in order to have the surety bond stand in place of the Vessel for the potential criminal fine or civil penalty imposed. *Id.*   The government's argument that no maritime jurisdiction exists is both hollow and not supported by the Coast Guard's own "agreement" requirements.[29]

The U.S. Supreme Court in explaining an expanding scope of admiralty jurisdiction, has held that "the boundaries of admiralty jurisdiction . . . [are] conceptual, rather than spatial." *Norfolk Southern Ry. Co. v. Kirby Pty Ltd.*, 543 U.S. 14, 23, 125 S. Ct. 385, 160 L. Ed. 283 (2004); *see also Slavchev v. Royal Caribbean Cruises, Ltd.*, 559 F.3d 251, 255-56 (4th Cir. 2009) (considering

---

[29] Under the clear statutory and legislative intent of 33 U.S.C. § 1908(e), the power to revoke customs clearance is solely to provide the government with the ability to obtain financial security for a potential fine or penalty. See Point II, infra. Accordingly, the District Court was correct in determining that the Coast Guard's demand for an unattainable bond (along with other non-monetary conditions beyond the scope of its authority), constituted the equivalent of "functional arrest" or "detention", thereby invoking the Court's admiralty jurisdiction and Supplemental Rule E authority to set a surety bond. JA634.

whether the factual situation presented was "sufficiently 'salty' to support admiralty and maritime jurisdiction") (citing *Kirby*, 543 U.S. at 22)). Here, the District Court's application of federal admiralty jurisdiction was exactly on point.

## II.   THE DISTRICT COURT CORRECTLY DETERMINED THE COAST GUARD HAD EXCEEDED THE SCOPE OF ITS STATUTORY AUTHORITY AND ABUSED ITS DISCRETION

The District Court properly exercised its authority and obligation to review the Coast Guard's demands for the release of the Vessel and consider the appropriate bounds of the Coast Guard's statutory authority under 33 U.S.C. § 1908(e).  *See Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43,104 S. Ct. 2778, 2781-82, 81 L. Ed. 2d 694, 702-03 (1986).  The final authority on issues of statutory construction rests with the Courts, which must reject administrative constructions that are contrary to congressional intent.  *Id*.; *see also A. T. Massey Coal Co. v. Barnhart*, 472 F.3d 148, 167 (4th Cir. 2006) (noting that under *Chevron* analysis, "***We will overturn unreasonable agency decisions because we presume that Congress does not authorize unreasonable statutory constructions***") (emphasis added)(internal citations to *Chevron* omitted).  "A Court cannot defer to an agency decision that is arbitrary, capricious or manifestly contrary to the statute." *Yousefi v. United States INS*, 260 F.3d 318, 329 (4th Cir. 2001).

44

"A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 314, 62 L. Ed. 2d 199, 204 (1979) (citing *Burns v. Alcala*, 420 U.S. 575, 580-581, 95 S. Ct. 1180, 1184, 43 L. Ed. 2d 469, 475 (1975)).  Upon review of the statute, as well as its legislative history, the District Court properly found that the plain meaning of the statute (*i.e.* – a means for the Coast Guard to obtain security for the payment of a fine or penalty) was intended. JA636-37.

Angelex was not seeking, nor did the District Court substitute its own judgment for that of the Coast Guard, to set the terms of the "Agreement on Security." *See* Appellant's Brief, p. 56.  Rather, Angelex properly sought judicial intervention and petitioned the District Court to apply the ordinary and natural meaning to the statutory language of 33 U.S.C. § 1908(e) and find that the Coast Guard had exceeded its statutory authority by requiring both a financial guarantee **and** demanding 'voluntary' compliance with other onerous terms for the reinstatement of the vessel's departure clearance.  JA6-35.

## A.    Applicable Standard for Statutory Analysis

It is an axiom of statutory interpretation that the plain meaning of an unambiguous statute governs, barring exceptional circumstances.  *See Rubin v. United States,* 449 U.S. 424, 430, 101 S. Ct. 698, 701-2, 66 L. Ed. 2d 633, 638

(1981).   In conducting a statutory analysis, the Court must "look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S. Ct. 1811, 1818, 100 L. Ed. 2d 313, 324 (1988).  The Court's inquiry begins with the actual text of the statute.  *See FMC Corp. v. Holliday*, 498 U.S. 52, 57, 111 S. Ct. 403, 407, 112 L. Ed. 2d 356, 363 (1990)("We begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.") (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S. Ct. 658, 661, 83 L. Ed. 2d 582, 587 (1985)) (internal quotation marks omitted); *see also Schooner Paulina's Cargo v. United States*, 11 U.S. 52, 60, 3 L. Ed. 266, 269, 7 Cranch 52 (1812) ("In construing these laws, it has been truly stated to be the duty of the court to effect the intention of the legislature; but this intention is to be searched for in the words which the legislature has employed to convey it.").

The relevant portion of 33 U.S.C. § 1908(e) at issue here provides, "Clearance may be granted upon the filing of a bond **or** other surety satisfactory to the Secretary." *Id.*  (emphasis added).  Where, as here, the statute does not provide an express definition of the term "bond or other surety," the term must be construed "in accordance with its ordinary or natural meaning."  *FDIC v. Meyer*, 510 U.S. 471, 476, 114 S. Ct. 996, 1000-1, 127 L. Ed. 2d 308, 317 (1994); *see also*

*Chesapeake Ranch Water Co. v. Bd. of Comm'rs,* 401 F.3d 274, 280 (4th Cir. 2005).

Although the ordinary and natural meaning of "bond **or** other surety" is clear[30] on its face, the legislative history of 33 U.S.C. § 1908(e) provides further instructive guidance. The legislative history confirms that Congress intended the Coast Guard's authorization to request CBP to withhold or revoke a vessel's customs clearance was granted for the limited and express purpose to obtain security to **ensure the payment of a fine or civil penalty** that might be imposed against a vessel.[31] *See* House Report No. 96-1224 *reprinted in* 1980 U.S.C.C.A.N. 4849, 4864. Specifically, the House of Representatives Committee on Merchant Marine and Fisheries, in discussing HR 6665 (the Bill that was subsequently enacted as APPS) stated:

---

[30] According to the <u>Concise Oxford Dictionary of Current English</u> (9th ed. 1995), the definition of "surety" includes "money given as a guarantee that someone will do something"; *see also* <u>Black's Law Dictionary</u> 1483 (9th ed. 2009) (definition of "surety" includes "a formal assurance; esp., a pledge, bond, guarantee, or security given for the fulfillment of an undertaking"). In this case, the District Court appropriately reviewed the underlying legislative intent in order to apply the ordinary and natural meaning to the statute. JA636. The phrase "bond or other surety" is not so ambiguous that its ordinary and natural meaning cannot be applied in the instant matter, (*i.e.* bond or some other financial surety such as an escrow agreement, letter of undertaking, bank guarantee, cash deposit into the registry of the Court, etc.), in order to satisfy a potential fine or penalty and to allow for CBP to reinstate the vessel's clearance. *Id.*

[31] *See* pp. 11-12, *supra*; *United States v. Ionia Management S.A.*, 555 F. 3d 303, 309 (2d Cir. 2009); *United States v. Jho*, 534 F.3d 398, 403 (5th Cir. 2008); *United States v. Abrogar*, 459 F.3d 430, 435 (3d Cir. 2006).

> ***To ensure payment of any fine or civil penalties*** that might be incurred upon completion of criminal proceedings or civil penalty actions, the Secretary of Treasury is required to refuse or revoke clearance to any ship upon the request of the Secretary of Transportation. ***However, clearance may be granted upon filing a bond or other satisfactory security***.

*See* House Report No. 96-1224 *reprinted in* 1980 U.S.C.C.A.N. 4849, 4864.

Under proper statutory analysis, wherein the terms are given their ordinary and natural meaning, the District Court correctly found that the Coast Guard has exceed its authority and abused its discretion by improperly broadening the definition of "other surety" to include "additional terms not related to securing the ultimate payment of any fines or civil penalties that might follow" and as such "it has exceeded its legal authority under the statute." JA637. District Judge Doumar further held:

> In this case, the Coast Guard seeks to impose several conditions designed not to assure payment of any fines or civil penalties, but to facilitate the prosecution of criminal or civil proceedings against the petitioners. In so doing, the Coast Guard has exceeded its legal authority and abused its discretion**.**

*Id.*

It is clear that the purpose behind the power to withhold customs departure clearance in 33 USC § 1908(e) is limited solely to ensuring there is an adequate means to pay any criminal fine or civil penalty that might be imposed. The location of the disjunctive word "**or**" between "bond" and "other surety," must be given its ordinary and natural meaning. The Coast Guard exceeded its authority by

48

interpreting the statute in a conjunctive manner as evidenced by the agency's demands that in order to obtain departure clearance, Angelex was required to post a surety bond **and** "agree" to other objectionable terms and conditions. JA636-37; *see also* Appellant's Brief at pp. 50-56.

The plain meaning of the statute does not permit the Coast Guard to require **both** a "bond" **and** something else. More to the point, the statute does not (and cannot) allow the Coast Guard to arbitrarily require Angelex to waive rights and defenses as a condition for the release of the vessel detention. *See, e.g.*, *A. T. Massey Coal Co. v. Barnhart*, 472 F.3d 148, 162 (4th Cir. 2006) (Court does not just review a word in isolation, but the "statutory context," including the "contemporaneous historical and legislative context in which the [statute] was enacted."). The straightforward and unambiguous application of the entire phrase is that the vessel's departure clearance is reinstated upon the filing of a surety bond **or** some other financial instrument meant to guarantee payment of a potential fine or penalty. The imposition of terms and obligations which infringe upon the rights of Angelex (among others) is simply beyond the Coast Guard's statutory authority and is not a permissible exercise of agency discretion when viewed in connection with the plain meaning of the statutory history of 33 U.S.C. § 1908(e). JA 636-37.

**B.    The government's Statutory Construction Arguments are Misplaced.**

The government asserts that there is nothing in 33 U.S.C. § 1908(e) which "limits the scope of the surety to money without any other conditions." *See* Appellant's Brief at p. 51.  In support, the government relies upon dicta from the Southern District of Alabama, where the Court suggested "'other surety' must refer to some form of assurance other than money; otherwise it would be redundant of the term 'bond'" *Id.*, (citing *Giuseppe Bottiglieri Shipping Co. S.p.A. v. United States*, 843 F. Supp. 2d 1241, 1248 n. 14 (S.D. Ala. 2012)). The government then makes the strained analysis that Congress could not have intended to apply a rigidly disjunctive meaning where "no real distinction can be made between conditions designed to secure payment of a fine on the one hand, and conditions designed to facilitate prosecution on the other." *Id.*

Notably, the government cites absolutely no authority in support of its interpretation[32] that there was a Congressional intent to require "other" conditions

---

[32] The government's strained argument mirrors the pattern of Lewis Carroll's literary work:

> "When *I* use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean — neither more nor less."
> "The question is," said Alice, "whether you *can* make words mean so many different things."
> "The question is," said Humpty Dumpty, "which is to be master— that's all."

Carroll, Through the Looking-Glass (and What Alice Found There), 1871.

to facilitate prosecution of alleged violations of federal statutes. There is no such intent expressed either in the statute itself or in the legislative history.[33]

The government's argument that "or other surety" must mean non-financial conditions, because to interpret otherwise would render the bond "worthless", must fail. *See* Appellant's Brief, p. 52. It is actually Angelex's construction, *i.e.*, that the statute requires either a surety bond or other financial guarantee, which is consistent with the interpretive canon of *ejusdem generis*, which provides "when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Brogan v. United States*, 522 U.S. 398, 403 n.2, 118 S. Ct. 805, 139 L. Ed. 2d 830 (1998) (internal citations omitted). As the Fourth Circuit stated in *Southern R. Co. v. Columbia Compress Co.*, 280 F. 344, 347-348 (4th Cir. 1922):

> When an author makes use, first, of terms, each evidently confined and limited to a particular class of a known species of things, and then, after such specific enumeration, subjoins a term of very extensive signification, this term however general and comprehensive in its possible import, yet, when thus used, embraces only things *'ejusdem generis'* -- that is, of the same kind or species -- with those comprehended by the preceding limited and confined terms . . .

*Id*. (internal citations omitted).

---

[33] Had Congress intended to authorize the Coast Guard's practice of requiring a bond *and* security agreements containing lengthy terms and conditions above and beyond monetary surety, it would have worded 33 U.S.C. §1908(e) to read along the lines of, "bond *and* a Security Agreement to facilitate investigation." Clearly it did not do so, and nothing in the language of the statute indicates such an intent.

The statute clearly envisions that in addition to the specific type of financial security, *i.e.* the "bond", the Coast Guard is also authorized to accept other types of financial surety, such as cash posted to the registry of the Court, Letters of Undertaking, escrow account deposits, Letters of Credit, etc. Such a conclusion and interpretation is supported both by the disjunctive use of the word "or" **and** the legislative history of the statute. JA636-37.  There is certainly no suggestion in the statute or its legislative history that the requirement of a *bond or other surety* to "ensure the payment of any fine or civil penalties," as intended by Congress, provides a means for the Coast Guard to obtain waivers of due process rights or the imposition of new obligations through the "Agreement on Security."

In a final attempt to salvage its unsupportable position, the government improperly proffers the need to "prosecute" this and other related APPS cases to their full extent.  *See* Appellant's Brief at p. 53-58.  However, "**[I]n government as in life, a good end does not justify any and every means.**" *Midwest Video Corp. v. FCC*, 571 F.2d 1025, 1041-42 (8th Cir. 1978) ("The fundamental principle that governmental agencies are limited to the exercise of power delegated by the Congress would be nullified if an agency . . . were at liberty to expand its jurisdiction, as far and wide as it wished, by the facile, case-by-case step of re-writing the objectives found in the delegating statute. If "jurisdiction" be synonymous with agency-drafted, *ad hoc* "objectives," Congress and the courts

become essentially superfluous") (emphasis added); see also *Olmstead v. United States*, 277 U.S. 438, 477 (1928)(J. Brandeis dissenting)("**To declare that in the administration of the criminal law the end justifies the means -- to declare that the Government may commit crimes in order to secure the conviction of a private criminal -- would bring terrible retribution.** Against that pernicious doctrine this Court should resolutely set its face.")(emphasis added).

Here, the District Court properly reigned in an agency[34] which clearly exceeded its statutory authority and abused its discretion, and held: "[i]n more than thirty years on the bench, this Court can recall seeing no greater disregard for due process, nor any more egregious abdication of the reasonable exercise of discretion." JA638.

---

[34] The government's professed "prosecutorial needs" should not be well received by this Court and are background noise to a red-herring. Prior to the issuance of Judge Doumar's order, the government conducted and completed its investigation. Subsequent to the order, a robust indictment was sought and obtained and the prosecution is proceeding before the District Court in the ordinary way.

## CONCLUSION

For the reasons set forth herein, the Judgment of the District Court should be affirmed in all respects.

Respectfully submitted,

CHALOS & CO, P.C.

 s/ George M. Chalos
GEORGE M. CHALOS
55 Hamilton Avenue
Oyster Bay, New York 11771
(516) 714-4300

*ATTORNEYS FOR PETITIONERS-APPELLEES*

JUNE 10, 2013

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,995 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

s/ George M. Chalos
GEORGE M. CHALOS

55

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2013, I electronically filed the foregoing brief with the Clerk of the Court for the United States court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.  I further certify that I will cause eight (8) paper copies of this brief to be filed with the Court by overnight mail.

The participants in this case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

s/ George M. Chalos_____